IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EMMANUEL DAVENPORT,

    Plaintiff,

v.

CITY OF PHILADELPHIA, et al.,

    Defendant.

CIVIL ACTION
NO. 16-6397

## OPINION

**Slomsky, J.**      October 26, 2018

### I.    INTRODUCTION

Plaintiff Emmanuel Davenport brings this action pursuant to 42 U.S.C § 1983, alleging violations of his civil rights arising out of his arrest on October 11, 2016. (Doc. No. 26.) Defendants are the City of Philadelphia, former Philadelphia Police Commissioner Charles Ramsey, and Detective Luz Varela and Officer Eliezer A. Morales, both of the Philadelphia Police Department. (Id.)

In Count I of the Second Amended Complaint, Plaintiff alleges violations of his Fourth Amendment rights by Defendants Varela and Morales under 42 U.S.C § 1983, claiming that Defendants' actions "violated Plaintiff's right…to be free from an unlawful stop, detention, and/or arrest and malicious prosecution." (Id. at 8.) In Count II, Plaintiff alleges violations of his Fourth Amendment rights and Fourteenth Amendment rights pursuant to 42 U.S.C § 1983, asserting that "the conduct of Defendants Morales and Varela, was directly caused by the actions and/or inaction of the City of Philadelphia, Pennsylvania and former Philadelphia Police Commissioner Charles Ramsey, which has encouraged, tolerated, ratified and has been deliberately indifferent" to the need for more training and supervision of police officers." (Id. at

1

8-9.) In Count III, Plaintiff asserts various state law claims against Defendants Varela and Morales, including false arrest, false imprisonment, malicious prosecution, invasion of privacy, and international infliction of emotional distress. (Id. at 10.)

On May 22, 2018, Defendants City of Philadelphia and former Police Commissioner Charles Ramsey filed a Motion to Dismiss Count II of the Second Amended Complaint for Failure to State a Claim. (Doc. No. 29.) Plaintiff filed a Response in Opposition to Defendants' Motion (Doc. No. 31), and on June 26, 2018, the Court held a hearing on Defendants' Motion. (Doc. No. 34.) Defendants' Motion is now ripe for a decision. For the reasons discussed below, the Court will grant Defendants' Motion.

## II.   BACKGROUND

On October 11, 2016,[1] Plaintiff Emmanuel Davenport was arrested at his home at 2216 E. Ann Street by Philadelphia Police Officer Eliezer Morales and another unnamed officer. The

---

[1] Defendants' present Motion seeks to dismiss Count II of the Second Amended Complaint. (Doc. No. 29.) In each of Plaintiff's three Complaints (Doc. Nos. 1, 14, 26), he uses incorrect dates to refer to the events in the case. First, Plaintiff states that Defendants filed the criminal complaint in state court and arrested him on July 16, 2015. (Doc. No. 26 at 3-4.) Somewhat confusingly, Plaintiff next asserts that the criminal complaint stated that he assaulted Theressa Stover with a gun on October 11, 2016. (Id. at 4.)

In support of his Complaint, Plaintiff cites to his state court action, Commonwealth v. Davenport, MC-51-CR-0028674-2016. (Id. at 3-4.) In the Second Amended Complaint, he states that the criminal complaint is attached as Exhibit A. (Id.) It is not. Instead, the criminal complaint is only attached to the First Amended Complaint (Doc. No. 14) as Exhibit A. In an attempt to understand the chronological sequence of events, the Court examined the criminal complaint attached to the First Amended Complaint (Doc. No. 14.), and has determined that the events at issue occurred on the following days:

    Date of Alleged Assault with Firearm:    July 12, 2016

    Date of Arrest:    October 11, 2016

    Date of Preliminary Hearing:    October 26, 2016

(Doc. No. 14, Ex. A.)

2

arrest was made after a criminal complaint was filed against him in Philadelphia Municipal Court by Philadelphia Police Detective Luz Varela. (Doc. No. 26 at 3-4.) The complaint alleges the following:

> At or around 2116 E. Ann Street in the City and County of Philadelphia, the Defendant knowingly, intentionally, or recklessly caused/attempted to cause bodily injury to the Complainant T.S. (girlfriend) by pointing a gun at her face. Defendant possessed this firearm on or about his person without a license to carry on the streets of Philadelphia.

(Doc. No. 14 at 14.) The complaint states that this conduct occurred on July 12, 2016. (Id.) It further states that Theressa Stover filed a complaint against Plaintiff. She is listed as the Complainant. (Doc. No. 26 at 4.)

Plaintiff contends that when he was arrested, he informed the officers that he was a correctional officer in the Philadelphia penal system and that he possessed an Act 235 Card that allowed him to carry a firearm to and from work. (Id. at 5.) Nevertheless, he was taken into custody and then incarcerated at the Curran-Fromhold Correctional Facility in Philadelphia. (Id. at 4.)

On October 26, 2016, Plaintiff had a preliminary hearing. (Id.) At the hearing, Stover testified that she never called the police to lodge a complaint against Plaintiff or filed a report alleging that he assaulted her with a firearm. (Id.) Instead, she told the court that on October 11, 2016, Officer Morales and another unnamed Philadelphia Police Officer simply arrived at the house she shared with Plaintiff. (Id. at 4-5.) Upon their arrival, Stover informed the officers that Plaintiff possessed a firearm. (Id. at 5.) According to Stover, the officers then asked Plaintiff to come outside so that they could disarm him. (Id.) Stover testified that Plaintiff complied with the officers' request, "at which time [he] was met at the doorway and disarmed, after which he was handcuffed, then transported to the station where he was placed under arrest." (Id.) In

3

addition, Stover told the court that Plaintiff was in fact a correctional officer in Philadelphia and carried an Act 235 Card. (Id.)

Officer Morales also testified at Plaintiff's preliminary hearing. (Id.) According to the Complaint, Officer Morales told the court that Stover never actually gave a statement to the police in support of the criminal complaint filed on October 11, 2016. (Id.) Moreover, Officer Morales testified that a police investigation revealed that Plaintiff actually possessed an Act 235 Card that licensed him to carry a firearm to and from work. (Id.) After hearing from Stover and Officer Morales, the judge dismissed the action against Plaintiff due to lack of evidence. (Id. at 4.)

Plaintiff contends that his wrongful arrest, incarceration, and prosecution are normal occurrences in Philadelphia. (Id. at 5.) In particular, he asserts that Philadelphia has long abused the civil rights of African-American men by subjecting them to illegal stops and searches. (Id.) According to the Complaint, the Philadelphia Daily News revealed in 2014 that Philadelphia had paid over $70 million to settle lawsuits against its police officers over a six-year period. (Id. at 6.)

To further support his contention, Plaintiff cites to a January 2011 consent decree in in Bailey v. City of Philadelphia, Civil Action No. 10-5952 (E.D. Pa. Nov. 4, 2010), in which the City of Philadelphia recognized the need to implement proper stop and frisk policies to ensure compliance with constitutional standards.[2] (Id. at 5-6; Doc. No. 14 at 17-18.) Additionally, the City agreed to establish a monitoring system that would allow the police department, lawyers for

---

[2] Plaintiff cites to the consent decree in Bailey v. City of Philadelphia, Civil Action No. 10-5952 (E.D. Pa. Nov. 4, 2010), in the Second Amended Complaint. (Doc. No. 26.) But like above, the consent decree is only attached to the First Amended Complaint (Doc. No. 14), and is not attached to the Second Amended Complaint.

4

the plaintiffs, and an independent court-appointed monitor to review Philadelphia Police Department stop and frisks. In relevant part, the consent decree provides:

> The Plaintiffs and the City will review current [Philadelphia Police Department] training, supervision, and discipline policies to determine whether any changes are necessary or appropriate to ensure that stops are conducted only where there is reasonable suspicion of criminal conduct and frisks are made only where there is reasonable suspicion that the person stopped is armed and dangerous. Where appropriate, new directives, regulations or other policy statements will be issued by the [Philadelphia Police Department], or ordered by the Court.

(Doc. No. 14 at 20.) Further, the City agreed "to implement policies and practices to ensure that stops and frisks are not conducted on the basis of race or ethnic origin of the suspect." (Id.)

On February 24, 2015, after reviewing data from the stop and frisk monitoring system, the ACLU of Pennsylvania and the law firm of Kairys, Rudovsky, Messing & Feinberg LLP filed a report which found that 37% of over 200,000 pedestrian stops by Philadelphia Police Officers were made without reasonable suspicion, and thus violated the Fourth Amendment of the United States Constitution. (Doc. No. 26 at 6.) According to the Complaint, these constitutional violations occurred under the purview of former Philadelphia Police Commissioner Charles Ramsey. (Id. at 8-9.) Plaintiff cites no evidence pertaining to stop and frisk policies or practices at the time of his arrest, detention, and prosecution in October 2016.

### III. STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate,

LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility"

6

determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

IV. ANALYSIS

In the present action, Defendants City of Philadelphia and former Police Commissioner Charles Ramsey advance two arguments in support of their Motion to Dismiss Count II of the Second Amended Complaint for Failure to State a Claim. (Doc. No. 29.) Specifically, Defendants argue that (1) Plaintiff failed to plead a Monell claim under § 1983 because the Complaint contains no relevant factual allegations concerning the City's policies and customs; and (2) Plaintiff failed to plead facts showing that Commissioner Ramsey was personally involved in the alleged wrongs. (Id.)

After reviewing the facts as set forth above, the Court is persuaded by Defendants' arguments and finds that Plaintiff has failed to meet its burden on Count II of the Complaint. Thus, for the reasons discussed below, the Court will grant Defendants' Motion to Dismiss the Monell claim.

### A. Plaintiff Has Failed to Plead Facts Sufficient to Show that Defendants' Policies, Custom, or Deliberate Indifference Caused His Injuries.

Here, Defendants first argue that the Court should dismiss Count II of Plaintiff's § 1983 Monell claim because Plaintiff "fails to make any allegations regarding a municipal policy or custom which caused a violation of his rights." (Doc No. 29 at 4.) In relevant part, the statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Notably, Section 1983 does not create substantive rights. Rather, it is a statutory mechanism that allows federal courts to review alleged state and local violations of federal law. Indeed, the purpose of the statute "was to interpose the federal courts between the States and the people, as guardians of the people's federal rights." Mitchum v. Foster, 407 U.S. 225, 242 (1972).

In the present action, Plaintiff brings a Monell claim against Defendants City of Philadelphia and former Philadelphia Police Commissioner Charles Ramsey pursuant to § 1983, alleging that his wrongful arrest, detention, and prosecution were the result of Defendants' practices, policies, customs, and deliberate indifference. (Doc. No. 26 at 8-9.) As set out in the eponymous Monell v. Dep't of Soc. Serv. of City of New York, 436 U.S. 658 694 (1978), a municipality like Philadelphia is not responsible under § 1983 for the random acts of its employees based on respondeat superior, but a municipality can be sued when an official policy or custom causes an injury to a plaintiff.

To establish a Monell claim, a plaintiff must show that his injury was caused by (1) official city policy, (2) city custom, or (3) a city's deliberate indifference to constituents' civil rights. Natale v. Camden Cty Correctional Facility, 318 F.3d 575, 584 (3d Cir. 2003). The Third Circuit has explained that a policy is made when a decisionmaker with final authority to establish municipal policy issues an official proclamation, policy, or edict. Wright v. City of Philadelphia, 685 Fed. App'x. 142, 146 (3d Cir. 2017) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)). Custom, however, is not specifically endorsed or authorized by law. Id. Rather, custom stems from policymakers' "acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity." Id. (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989).

8

Deliberate indifference stems from government inaction, namely the failure to train. Where, as here, the plaintiff alleges his injury was caused by a municipality's deliberate indifference, the plaintiff must establish that the city failed to train or supervise city employees on their duty to avoid violating civil rights. City of Canton v. Harris, 489 U.S. 378, 389 (1989). To show the deliberate indifference required for a failure to train claim, a plaintiff must show "a municipal actor disregarded a known or obvious consequence of his action." Bd. of. Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 410 (1997). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." Connick v. Thompson, 563 U.S. 51, 61 (2011).

But merely proving that an accident or injury could have been avoided if an employee had had more or better training will not establish Monell liability. City of Canton, 489 U.S. at 391. Connick provides that plaintiffs are required to plead facts with particularity to show a deliberate choice by an official to follow a course of action that would amount to a failure to train. Connick, 563 U.S. at 61; Summers v. Commissioner Charles Ramsey, No. 13-6644 2016 WL 71886616, at *11 (E.D. Pa. December 12, 2016).

Importantly, for Monell liability to attach, "the identified deficiency in a [municipal]ity's training program must be closely related to the ultimate injury." Id. (quoting City of Canton, 489 U.S. at 391.) Merely showing that a particular officer violated policy, or that better training would have enabled the officer to avoid the injury-causing conduct, is insufficient to establish a municipality's liability. Simmons v. City of Phila., 947 F.2d 1042, 1060 (3d Cir. 1991).

In Count II of this action, Plaintiff claims that his wrongful arrest at the hands of Defendants Varela and Morales was caused by Defendants' deliberate indifference in failing to train and supervise police officers on their duty to avoid violating civil rights. (Doc. No. 26.) Specifically, he contends that his injuries were "directly caused by the actions and/or inaction of the City of Philadelphia, Pennsylvania and former Philadelphia Police Commissioner Charles Ramsey" who failed to train or supervise police officers in a myriad of areas, including stop and frisk, the proper investigation of crimes, the scope and existence of police authority, and the power to detain, arrest, and initiate proceedings. (Id. at 8-9.)

Plaintiff's allegations, however, do not raise an inference that the City of Philadelphia had a policy, custom, or was even deliberately indifferent to the conduct that directly caused Plaintiff's arrest, detention, and prosecution. In the Complaint, Plaintiff relies on three factual allegations support his failure to train claim: (1) the January 2011 consent decree in which the City of Philadelphia acknowledged the need for constitutional stop and frisk practices and established a monitoring system; (2) the 2014 Daily News article that revealed that the City had paid over $70 million to settle police misconduct lawsuits; and (3) the February 2015 report filed by the ACLU and Kairys, Rudovsky, Messing & Feinberg LLP that found that 37% of pedestrian stops in Philadelphia were made without probable cause or reasonable suspicion. (Doc. No. 26 at 5-6.)

As articulated in City of Canton, the deficiency in a municipality's training program must be closely related to the Plaintiff's injury for Monell liability to attach. City of Canton, 489 U.S. at 391. Here, Plaintiff claims deficiencies that are wholly irrelevant to the case at hand. For one, he relies heavily on the January 2011 consent decree and the February 2015 monitoring report, both of which address the City's stop and frisk practices. (Doc. No. 26 at 5-6.) But Plaintiff was

10

never actually stopped and frisked—he was arrested at his home pursuant to a criminal complaint filed in Philadelphia Municipal Court. (Id. at 3-4.) In any event, the 2011 consent decree corrected the purported unconstitutional stop and frisk practices. Specifically, the City of Philadelphia agreed to "review current [Philadelphia Police Department] training, supervision, and discipline policies" and then issue, where appropriate, "new directives, regulations, or other policy statements." (Doc. No. 14 at 20.) Thus, even if Plaintiff's injury did stem from a stop and frisk, there are no plausible factual allegations that the practices underlying the 2011 consent decree were still in effect when Plaintiff was arrested in October 2016.

Plaintiff also cites to a 2014 Daily News article that revealed that the City of Philadelphia paid over $70 million to settle police misconduct lawsuits over a six-year period. (Doc. No. 26 at 6.) Plaintiff relies on this article to claim that his injury occurred because Defendants were "aware of rampant constitutional infractions being committed by its Police Department" but failed to implement a "wide net policy" to discipline and train officers. (Doc. No. 31-1 at 13.) This reliance is misguided.

Connick dictates that plaintiffs are required to plead facts with particularity to show a deliberate choice by an official to follow a course of action that would amount to failure to train. Connick, 563 U.S. at 61. Plaintiff has not done so. The mere fact that Defendants were aware of vague misconduct lawsuits in the years leading up to 2014 does not show that they made a deliberate choice to ignore those lawsuits and fail to train officers. In fact, Plaintiff's own factual allegations support the opposite conclusion. In Bailey v. City of Philadelphia, Civil Action No. 10-5952 (E.D. Pa. Nov. 4, 2010), a police misconduct lawsuit, the City of Philadelphia entered into a consent decree in which it agreed to "review current [Philadelphia Police Department] training, supervision, and discipline policies" and then issue, where appropriate, "new directives,

regulations, or other policy statements." (Doc. No. 14 at 20.) The City also established a monitoring system that, to this day, allows the police, plaintiffs' counsel, and an independent court-appointed monitor to analyze stop and frisk practices. (Id. at 3.) Thus, for a considerable period of time, the City has had in place oversight to avoid abuses in stop and frisk. For this reason, Plaintiff's argument that Defendants failed to train officers despite being aware of police misconduct lawsuits lacks merit.

Thus, even accepting the Complaint's factual allegations as true and viewing them in the light most favorable to Plaintiff, it is clear that Plaintiff has failed to plead a Monell claim against the City of Philadelphia and Commissioner Ramsey. Accordingly, the Court is persuaded by Defendants' arguments that the Monell claim in Count II of the Second Amended Complaint should be dismissed.

### B. Plaintiff Fails to Plead Facts Sufficient to Show that Defendant Charles Ramsey was Personally Involved in Decisions or Events that Led to Plaintiff's Injury

Second, Defendants argue that the Court should dismiss Count II of the Complaint as to former Police Commissioner Charles Ramsey because Plaintiff fails to plead that the former Police Commissioner had any personal involvement in the alleged violations of his civil rights that occurred from October 11, 2016 to October 26, 2016. (Doc. No. 29 at 5-6.)

To prevail against a defendant in his individual capacity under § 1983, a plaintiff must establish that the defendant had personal involvement in committing the alleged violations. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981)). Any liability of an individual officer must "be based on his own acts or omissions, not those of [other] individual officers." Agresta v. City of Philadelphia, 801 F. Supp. 1464, 1468 (citing Monell, 436 U.S. at 693.) Because there can be no vicarious liability claims under § 1983, the mere fact that a named defendant is in a supervisory position is

12

insufficient to establish liability under § 1983. Reaves v. Vaugh, No. 00-2786 2001 WL 936392, at *4 (E.D. Pa., Aug. 10, 2001) (citing C.H. ex rel. Z.H. v. Olivia, 226 F.3d 198, 201-02 (3d Cir. 2000)).

A plaintiff can show the personal involvement of a supervisor through allegations of personal direction or actual knowledge and acquiescence, so long as those allegations are made with particularity. Rode, 845 F.2d at 1207. Conclusory allegations and formulaic recitations of law are not enough to claim that a supervisor was personally involved in the deprivation of civil rights underlying a § 1983 claim. Santiago v. Warminster Twp., 629 F.3d 121, 131 (3d Cir. 2010).

Santiago involved a § 1983 claim against police officers and their supervisors, alleging that a resident suffered a heart attack after being subjected to excessive force during a raid on her home. Id. at 125. There, the Court explained that to find the police department supervisors liable under Section 1983, the plaintiff would have needed to establish that the supervisors "directed others to violate [her rights]." Id. at 130 (citing A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004.) Additionally, the court stated that a plaintiff claiming supervisor liability under § 1983 must allege a causal link between the supervisor's direction and the alleged civil rights violation. This can be established by demonstrating that the supervisor gave directions that the supervisor "knew or should reasonably have known would cause others to deprive the plaintiff of her constitutional rights." Id. (quoting Conner v. Reinhard, 847 F.2d 384, 397 (7th Cir. 1988)). The court in Santiago granted the motion to dismiss the § 1983 claims against the police officers in supervisory roles after finding that the complaint contained nothing more than a formulaic recitation of the elements of a supervisor

liability claim and conclusory allegations that the supervisors directed others to violate the plaintiff's rights. Id. at 131-32.

Here, to establish liability as to Commissioner Ramsey, Plaintiff had to allege facts making it plausible that Commissioner Ramsey directed Detective Varela and Officer Morales to conduct the investigation and arrest him in a manner that he knew or reasonably should have known would cause Plaintiff's injury. But Plaintiff has failed to allege such facts. He merely contends, without a scintilla of factual support, that his wrongful arrest, detention, and prosecution "stemmed from the failure of Defendant, former Philadelphia Police Commissioner Charles Ramsey as the principle policymaker and implementer of practices, procedures and customs used by Philadelphia law enforcement" to train or supervise officers to avoid the injury alleged. (Doc. No. 26 at 7.) Further, Plaintiff has offered nothing to indicate that Commissioner Ramsey even knew about the arrest, detention, or prosecution, but instead appears to base his claim solely upon Ramsey's supervisory role as Commissioner. Without more, Plaintiff has failed to plead facts sufficient to show that Commissioner Ramsey was personally involved in the decisions or events that caused his injuries as required under § 1983, and for this reason Commissioner Ramsey will be dismissed as a Defendant in Count II.

## V.  CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss Count II of the Second Amended Complaint in its entirety. (Doc. No. 26.) The claims against Detective Varela and Officer Morales in Counts I and III remain. An appropriate Order follows.